IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| US MAGNESIUM, LLC, a Delaware limited liability company,<br><br>                Plaintiff,<br><br>v.<br><br>ATI TITANIUM, LLC, a Delaware limited liability company, ALLEGHENY TECHNOLOGIES, INC., a Delaware corporation, and DOES 1-20,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:16-CV-1158 TS<br><br>District Judge Ted Stewart |

      This matter is before the Court on a Motion to Dismiss filed by Defendant ATI Titanium LLC ("ATI-Ti"), a Motion to Dismiss filed by Defendant Allegheny Technologies, Inc. ("Allegheny"), and a Motion for Discovery filed by Plaintiff. For the reasons discussed below, the Court will grant the Motions to Dismiss and deny Plaintiff's Motion for Discovery.

I.  BACKGROUND

      Plaintiff is a producer and supplier of magnesium, and operates a manufacturing facility in Rowley, Utah. On or about September 1, 2006, Plaintiff and ATI-Ti entered into the Supply and Operating Agreement (the "Agreement"). Under the Agreement, ATI-Ti promised to purchase magnesium from Plaintiff for use in manufacturing titanium sponge.

      The Agreement contained an economic force majeure clause which, under certain circumstances, allowed ATI-Ti to suspend its performance under the Agreement. On August 23, 2016, ATI-Ti invoked the economic force majeure clause and informed Plaintiff that it was suspending its performance under the Agreement 180 days following the letter. Soon thereafter,

ATI-Ti began ramping down the amount of magnesium it accepted from Plaintiff and the amount of magnesium chloride it provided to Plaintiff.  By doing so, Plaintiff alleges that ATI-Ti breached the Agreement and caused permanent damage to the electrolytic cells Plaintiff used to produce magnesium.  Plaintiff brings claims for breach of contract and for declaratory judgment.  In addition, Plaintiff asserts claims against Allegheny, ATI-Ti's parent company, based on an alter ego theory of liability.  Both Defendants seek dismissal.

## II.  STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[1]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[2] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[3]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[4]

---

[1] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[5] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[6]

In considering a motion to dismiss, a district court not only considers the complaint, "but also the attached exhibits,"[7] and "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[8] The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[9]

Federal Rule of Civil Procedure 12(b)(2) is the vehicle by which a party may move for dismissal based on lack of personal jurisdiction. Plaintiff bears the burden of establishing the jurisdiction over Defendant.[10] When a motion to dismiss for lack of personal jurisdiction is brought before trial and supported by affidavits and other written materials, Plaintiff need only

---

[5] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[6] *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted).

[7] *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[8] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[9] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[10] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

make a prima facie showing of jurisdiction.[11]  "The 'well pled facts' of the complaint must be accepted as true if uncontroverted by the defendant's affidavits, and factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits."[12] Unlike a claim under Rule 12(b)(6), when assessing personal jurisdiction under Rule 12(b)(2), the Court may consider matters outside of the pleadings without converting the motion to dismiss to one for summary judgment.[13]

### III.  DISCUSSION

A.  ATI-TI'S MOTION TO DISMISS

ATI-Ti seeks dismissal of Plaintiff's Complaint without prejudice based on Plaintiff's failure to abide by the dispute resolution provision of the Agreement.  Article 12 of the Agreement, entitled "Dispute Resolution," states:

> Section 12.1  <u>Mediation</u>.  Any dispute, difference, controversy or claim between the parties arising out of or in connection with this Agreement or as to rights or obligations hereunder may be referred by either Party to the respective executive officers or the parties for resolution to the satisfaction of the parties, if possible. Such executive officers may, if they so desire, consult outside experts for assistance in arriving at a resolution.  Such executive officers will make a bona fide attempt to settle any such dispute, difference, controversy or claim amicably through negotiations within sixty (60) days of its submission to them.  If the dispute, difference, controversy, or claim has not settled within sixty (60) days or within such other period as the parties may agree in writing, the parties will submit such dispute, difference, controversy or claim to settlement proceedings pursuant to mediation administered by the American Arbitration Association.
> Section 12.2  <u>Litigation</u>.  If any dispute, controversy, or claim has not been resolved within sixty (60) days of its submission to mediation pursuant to Section 12.1, either Party may submit such dispute, controversy, or claim to litigation.

---

[11] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[12] *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

[13] Fed. R. Civ. P. 12(d).

Plaintiff filed the instant action on October 12, 2016. That same day, Cameron Tissington, Vice President of Sales for Plaintiff, sent Defendants a letter invoking Section 12.1 of the Agreement. The parties have completed the informal resolution portion of Section 12.1 and, as of the filing of the Motion, were engaging in mediation.[14] The sixty-day period to engage in mediation expired on February 10, 2017.

ATI-Ti seeks dismissal, arguing that Plaintiff failed to comply with the dispute resolution provision of the Agreement prior to filing its Complaint. In response, Plaintiff first argues that Article 12 does not apply to its claims because Article 11, concerning the economic force majeure, contains a different resolution process. Second, Plaintiff argues that the dispute resolution process under Article 12 is voluntary and, therefore, not a condition precedent to litigation. Finally, Plaintiff argues that by the time the Court rules on this Motion, the parties will have completed mediation, making this Motion moot. Each argument will be addressed in turn.

Plaintiff first argues that Article 12's dispute resolution provision does not apply because Article 11 contains a more specific dispute resolution process concerning the economic force majeure clause. Article 11's economic force majeure clause allows ATI-Ti the ability to suspend its performance under the Agreement in certain circumstances. Providing notice of an economic force majeure triggers certain procedures. In particular, notice from ATI-Ti that it is invoking the clause begins a negotiation and audit period. Plaintiff argues that this more specific process governs this dispute, as opposed to Article 12's general dispute resolution clause.

---

[14] Defendant Allegheny has declined to participate in mediation.

5

Plaintiff's argument is without merit and is contradicted by the plain language of the Agreement.  Article 12's dispute resolution process applies to "[a]ny dispute, difference, controversy or claim between the parties arising out of or in connection with this Agreement."  The broad language of the Agreement necessarily includes disputes related to the economic force majeure clause.  The fact that invocation of the economic force majeure clause triggers certain procedures is irrelevant to whether Article 12 applies.  The two provisions are not mutually exclusive.  Nothing in Article 11 or 12 would take disputes related to the economic force majeure clause out of the dispute resolution process set out in Article 12.

Plaintiff next argues that Article 12 is optional and not a condition precedent to suit.  Article 12 is not a model of clarity.  As stated, Article 12 applies to "[a]ny dispute, difference, controversy or claim between the parties arising out of or in connection with" the Agreement.  Those disputes "*may* be referred by either Party to their respective executive officers of the parties for resolution to the satisfaction of the parties, if possible."  The executive officers then "will make a bona fide attempt to settle any such dispute."  If the dispute is not resolved in this manner within sixty days "the parties *will* submit such dispute, difference, controversy or claim to settlement proceedings pursuant to mediation administered by the American Arbitration Association."  If the dispute is not resolved within sixty days of its submission to mediation, "either Party may submit such dispute, controversy, or claim to litigation."

Plaintiff argues that the parties' use of the permissive word "may" with respect to the first level of dispute resolution shows that the parties did not intend to require this process in every circumstance.  This argument does not withstand scrutiny.

6

As stated, Section 12.1 states that disputes "may be referred by either Party to their respective executive officers of the parties for resolution to the satisfaction of the parties, if possible." The use of the word "may" in Section 12.1 relates to who may refer disputes to the parties' executive officers, not whether the parties must engage in such attempts. The word "may" in this instance indicates that either party can begin the dispute resolution process. That is, either party may refer a dispute to the executive officers. Once the dispute has been referred to the executive officers, they "*will* make a bona fide attempt to settle any such dispute." If a dispute remains, the parties "*will* submit such dispute, difference, controversy or claim to settlement proceedings pursuant to mediation administered by the American Arbitration Association." Only after the parties have engaged in mediation may the parties resort to litigation.

In any event, the issue of whether the parties must engage in informal dispute resolution through their executive officers is largely academic. After all, Plaintiff began that process when it filed its Complaint. By invoking the executive officer portion of dispute resolution process, Plaintiff must now comply with the remainder of Article 12. That includes engaging in mediation before filing suit.

Plaintiff's third argument is that ATI-Ti's Motion is moot because by the time the Court rules on it, the parties will have completed the dispute resolution process, including mediation. Essentially, the question is what should be done given Plaintiff's failure to comply with the dispute resolution process set out in the Agreement. Courts faced with similar cases have used

their discretion to either dismiss the action or to stay it pending mediation.[15] In making this determination, Courts focus on three main factors: the harm of dismissal to the plaintiff, the harm of not dismissing to the defendant, and the interests of judicial efficiency.[16]

Here, there is no suggestion that Plaintiff would be harmed if the Court were to dismiss this action. Defendant seeks dismissal without prejudice. Therefore, Plaintiff could re-file this action after mediation is completed and there is no risk that their claims will be lost.

Defendant argues that dismissal is necessary to reflect the parties' agreement and to allow mediation to proceed without the cloud of litigation. The Court agrees. The parties contracted for a certain dispute resolution procedure. By failing to engage in mediation prior to filing suit, Plaintiff has denied Defendant the benefit of their bargain. If the Court simply ignored Plaintiff's conduct "it would be setting a precedent that parties may disregard such conditions and pay no consequences so long as they subsequently engage in fruitless mediation. Such a position would plainly render the mediation requirement a nullity."[17] The Court cannot countenance such a clear disregard for a party's contractual obligations.

Finally, while the dismissal may result in certain inefficiencies, those inefficiencies do not outweigh the harm to Defendant if this case is not dismissed. Further, any inefficiency in dismissing the Complaint is due to Plaintiff failing to abide by the terms of the Agreement. Had Plaintiff complied with the dispute resolution process to which it agreed, dismissal would not be necessary.

---

[15] *Pulse Sys., Inc. v. SleepMed Inc.*, No. 6:15-CV-01392-JTM, 2016 WL 738201, at *4 (D. Kan. Feb. 23, 2016) (collecting cases).

[16] *Stone & Webster, Inc. v. Georgia Power Co.*, 968 F. Supp. 2d 1, 10 (D. D.C. 2013).

[17] *Id.*

Plaintiff further argues that various hurdles make any attempts at mediation futile. Plaintiff specifically points to the lack of compulsory process and the absence of Allegheny. Plaintiff's futility arguments are unavailing. Plaintiff agreed to the dispute resolution procedures in Article 12. It cannot now be heard to complain about any supposed deficiencies in those procedures. Therefore, the Court will dismiss Plaintiff's Complaint against ATI-Ti without prejudice.[18]

B.   ALLEGHENY'S MOTION TO DISMISS

Allegheny seeks dismissal for lack of personal jurisdiction and for failure to state a claim. Both arguments are addressed below.

*1.   Personal Jurisdiction*

Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[19] "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[20] Utah's long arm statute applies "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[21] Thus, it is "helpful to undertake the

---

[18] Plaintiff argues that Rule 12(b)(6) is not the proper vehicle for Defendant's Motion. Even assuming Plaintiff is correct, the outcome would remain the same. The only facts necessary to resolve this dispute are that Plaintiff initiated the informal dispute resolution process and that Plaintiff filed the Complaint without having completed the dispute resolution process. Those facts are not in dispute. Thus, even if Rule 56 provides the applicable standard, no factual disputes would preclude dismissal.

[19] *Kuenzle*, 102 F.3d at 456.

[20] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[21] Utah Code Ann. § 78B-3-201(3).

due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[22]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[23] The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction. For general jurisdiction to exist, "the defendant must be conducting substantial and continuous local activity in the forum state."[24] In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[25] When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction for injuries that "arise out of or relate to those activities."[26]

Plaintiff does not assert that the Court may exercise general jurisdiction over Allegheny. Thus, the question becomes whether there are sufficient contacts to support specific jurisdiction. Plaintiff points to a number of contacts Allegheny had with the state of Utah dating back to 2005 and 2006. Those contacts all relate to the opening of ATI-Ti's Rowley facility. However, none of Plaintiff's claims arise out of or relate to these contacts. Rather, Plaintiff's sole claim is that ATI-Ti breached the Agreement in the summer of 2016. ATI-Ti, not Allegheny, was the

---

[22] *Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[23] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[24] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[25] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[26] *Burger King v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

signatory to that Agreement. ATI-Ti was the entity created to own and operate the Rowley facility and the facts show that it was this entity that Plaintiff had been working with over the previous ten years. Therefore, Allegheny's contacts with Utah a decade earlier are irrelevant to Plaintiff's claims and are insufficient to establish specific jurisdiction.

Plaintiff also argues that personal jurisdiction over Allegheny is proper based on ATI-Ti's contacts with Utah. A court may not automatically exercise jurisdiction over a parent corporation merely because jurisdiction may be exercised over the parent's subsidiary.[27] For purposes of personal jurisdiction, "a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."[28] Plaintiff argues that personal jurisdiction over Allegheny is proper because ATI-Ti is the agent or alter ego of Allegheny.

"Companies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary."[29] "[A] wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the *in personam* jurisdiction of the state in which the activities occurred."[30] "When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former."[31]

---

[27] *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1278 n.4 (10th Cir. 2005).

[28] *Quarles v. Fuqua Indus. Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974).

[29] *Pro Axess, Inc.*, 428 F.3d at 1278.

[30] *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962).

[31] *Home-State Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990).

> For one corporate entity to be the alter ego of another, two requirements must be met. First, there must be such unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist. Second, the observance of the corporate form [must] sanction a fraud, promote injustice, or [cause] an inequitable result [to] follow.[32]

The first prong is called the formalities requirement, while the second prong is called the fairness requirement. Courts consider a variety of factors in determining whether one entity is the alter ego of another.[33] These factors include (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.[34] The first seven factors relate to the formalities element of the alter ego test, while the eighth factor is a restatement of the fairness element.[35]

In its Complaint, Plaintiff alleges that "at all relevant times, there was such a unity of interest and ownership that the separate personalities of the ATI-Ti and [Allegheny] did not exist and instead an alter ego relationship existed."[36] Plaintiff alleges that Allegheny "completely dominates and controls ATI-Ti such that ATI-Ti is its mere instrumentality and agent."[37] Plaintiff alleges that the "managers of ATI-Ti are all directors, officers, or in-house counsel of

---

[32] *Mun. Bldg. Auth. of Iron Cty. v. Lowder*, 711 P.2d 273, 278 (Utah 1985) (quotation marks omitted) (alterations in original).

[33] *See Jones & Trevor Mktg., Inc. v. Lowry*, 284 P.3d 630, 636 (Utah 2012) (citing *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987)).

[34] *Colman*, 743 P.2d at 786.

[35] *Jones & Trevor Mktg., Inc.*, 284 P.3d at 637.

[36] Docket No. 2 Ex. A ¶ 5.

[37] *Id.* ¶ 6.

[Allegheny], who manage ATI-Ti in the interests of [Allegheny]."[38] Plaintiff also alleges that Defendants shared headquarters and employees, engaged in non-arm's length transactions, and issued consolidated summaries of operations and financial statements.[39] Plaintiff further alleges that Allegheny holds itself out as owning the Rowley facility and made business decisions for ATI-Ti, including the decision to idle the facility.[40]

In response to these allegations, Defendant has presented the Declarations of G. Scott Rantovich and Karl D. Schwartz.  Mr. Rantovich states that that Allegheny and ATI-Ti are separate entities.  Allegheny is the parent company and ATI-Ti is an indirect subsidiary, removed by approximately five degrees of ownership.  Mr. Rantovich states that Allegheny does not oversee the day-to-day operations of ATI-Ti.  Instead, those activities are managed by ATI-Ti's employees and management team.  Further, Mr. Rantovich states that Allegheny and ATI-Ti maintain separate and independent by-laws, minutes, corporate records, financial records, and bank accounts.  Mr. Rantovich goes on to state that Allegheny and ATI-Ti are financially independent of each other and that ATI-Ti is responsible for its own profits and losses.  Further, ATI-Ti was fully capitalized and operates under its own budget.  Mr. Rantovich states that Allegheny does prepare consolidated financial statements for it and its subsidiaries and does file certain government-mandated reports for these entities.  However, Allegheny and its subsidiaries maintain separate financial records.

Mr. Schwartz's Declaration adds to that of Mr. Rantovich.  Like Mr. Rantovich, Mr. Schwartz states that Allegheny does not control or direct ATI-Ti's daily operations.  Those

---

[38] *Id.*

[39] *Id.* ¶ 5.

[40] *Id.* ¶ 6.

activities are overseen by ATI-Ti's management team, which is responsible for that entity's profits, losses, and operations of the company.  Mr. Schwartz further states that ATI-Ti is responsible for managing its contractual obligations, including obligations under the Agreement.  Importantly, Mr. Schwartz states that ATI-Ti's management team independently determined that the Rowley facility was not profitable and decided to invoke the economic force majeure clause, which led to the ramp down and eventual closing of the Rowley facility.  Mr. Schwartz states that ATI-Ti determined what information was to be provided to Plaintiff in conjunction with that decision and that ATI-Ti sent all notices and communications to Plaintiff related to that decision.

As stated, Plaintiff bases its agency/alter ego theories on assertions that Allegheny and ATI-Ti had common management, shared common headquarters, and issued joint financial reports.  Plaintiff also alleges that Allegheny controlled the actions of ATI-Ti and asserted ownership over the Rowley facility in various statements.  These will be addressed in turn.

The fact that Defendants may have common management "has been held insufficient to allow corporate veil piercing."[41]  The Supreme Court has stated that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts."[42]  Thus, the fact that certain individuals may have held positions at both Allegheny and ATI-Ti is insufficient to

---

[41] *Quarles*, 504 F.2d at 1364.

[42] *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988)).

14

pierce the corporate veil. For substantially the same reasons, Plaintiff's allegation that the two entities shared the same headquarters is insufficient.[43]

Plaintiff next points to joint financial statements and SEC filings to suggest that they show Allegheny's dominance and control over ATI-Ti. Various courts have held that these filings, by themselves, cannot satisfy the alter ego test.[44] In *Epps v. Stewart Information Services Corp.*, the plaintiff submitted evidence of the parent company's SEC filings, which reflected that the debts and assets of the subsidiary were considered those of the parent company. The Eighth Circuit found that the SEC filings were insufficient to show that the subsidiary was the alter ego of the parent.[45] The same result is warranted here. As the Declaration of Mr. Schwartz makes clear, these filings were made to comply with regulatory requirements and were not intended to disregard the two entities' separate legal existence or operations.[46]

Plaintiff next asserts that Allegheny makes business decisions for ATI-Ti and made the decision to idle the Rowley facility. Plaintiff relies on two sources for these assertions. First, Plaintiff relies on the allegation in its Complaint that Allegheny made business decisions for ATI-Ti, including the decision to idle the Rowley facility. Plaintiff's allegations are specifically refuted by the Declarations of Mr. Rantovich and Mr. Schwartz, as set forth above. Mr. Rantovich has stated that Allegheny and ATI-Ti are separate and independent legal entities. Mr.

---

[43] *Global 360, Inc. v. Spittin' Image Software, Inc.*, No. Civ. A3:04-CV-1857-L, 2005 WL 625493, at *9 (N.D. Tex. Mar. 17, 2005) (stating that shared headquarters is insufficient to demonstrate alter ego).

[44] *Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642, 650 (8th Cir. 2003); *Velez v. Portfolio Recovery Assoc., Inc.*, 881 F. Supp. 2d 1075, 1085 (E.D. Mo. 2012); *Herman v. YellowPages.com, LLC*, 780 F. Supp. 2d 1028, 1033 (S.D. Cal. 2011).

[45] *Epps*, 327 F.3d at 650.

[46] Docket No. 37 Ex. 1 ¶ 6.

Rantovich further states that Allegheny does not oversee the day-to-day operations of ATI-Ti. Instead, these activities are managed by ATI-Ti's employees and management team. Mr. Schwartz confirms that Allegheny does not control or direct ATI-Ti's daily operations. Mr. Schwartz further states that ATI-Ti's management team independently determined that the Rowley facility was not profitable and made the decision to invoke the economic force majeure clause. Based upon this evidence, the Court cannot accept Plaintiff's allegations.

Plaintiff also relies on the Declaration of Cameron Tissington to support its assertion that Allegheny exercised control over ATI-Ti. Mr. Tissington states that Plaintiff worked with Lynn Davis, whom Mr. Tissington asserts is an Allegheny employee, as opposed to working directly with ATI-Ti.[47] Mr. Tissington states that Plaintiff would occasionally direct high-level operational concerns to Mr. Davis and, on several occasions, Mr. Davis flew to Salt Lake City to address such concerns.

Mr. Davis' role within Allegheny and ATI-Ti is unclear. However, there is evidence that Mr. Davis was responsible for overseeing the Rowley facility.[48] Thus, the fact that Plaintiff approached him with high-level concerns is unsurprising. Moreover, as discussed, it would be perfectly acceptable for Mr. Davis to have roles in both Allegheny and ATI-Ti. Having dual roles would not allow for piercing the corporate veil. However, even assuming for the sake of argument that certain matters were brought to Mr. Davis' attention in his role as an employee or officer of Allegheny, there is no evidence that those matters have anything to do with Plaintiff's

---

[47] Docket No. 31 ¶¶ 13–15.

[48] Docket No. 29 Ex. 4.

claims here.  Thus, the only evidence on point refutes Plaintiff's claims that Allegheny controlled ATI-Ti and made the decision to invoke the economic force majeure clause and idle the plant.

Finally, Plaintiff relies on statements whereby Allegheny asserted ownership over the Rowley plant and stated that it was Allegheny's decision to idle the plant.  In these circumstances, employees of Allegheny would use words like "we" or "our" in describing actions related to the Rowley facility.  These words, however, do not provide a basis for disregarding the corporate form.  As stated, Mr. Schwartz states that it was ATI-Ti's management team that independently determined that the Rowley plant was not profitable and decided to invoke the force majeure clause, which ultimately led to the closure of the plant.  There is no evidence to the contrary.  At most, these statements show a parent company discussing the activities of its subsidiary.  Mr. Schwartz makes clear that "it is common and, in fact, expected for a parent entity to report upon events that materially impact a consolidated subsidiary."[49]  Such statements are insufficient to pierce the corporate veil.

Because there are insufficient contacts to support personal jurisdiction over Allegheny, the Court will grant Allegheny's Motion to Dismiss for lack of personal jurisdiction.

### 2. *Failure to State a Claim*

Allegheny argues that, even if the Court could exercise personal jurisdiction, Plaintiff's claim should be dismissed for failure to state a claim.  As set forth above, to state a claim for alter ego, two requirements must be met.  "First, there must be such unity of interest and ownership that the separate personalities of the corporation[s] . . . no longer exist.  Second, the

---

[49] Docket No. 37 Ex. 1 ¶ 8.

observance of the corporate form [must] sanction a fraud, promote injustice, or [cause] an inequitable result [to] follow."[50]

Even assuming the Court had jurisdiction over Allegheny, dismissal without prejudice would still be required because Plaintiff has failed to sufficiently plead facts supporting the fairness element. Plaintiff alleges that an injustice would result unless the separate legal existences of ATI-Ti and Allegheny are disregarded. However, this is a conclusory allegation that is not supported by factual allegations. Therefore, dismissal without prejudice is required.

C.  PLAINTIFF'S MOTION FOR DISCOVERY

Plaintiff requests jurisdictional discovery. "When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."[51] "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant."[52] "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'"[53]

Here, Plaintiff has failed to demonstrate the need for jurisdictional discovery. As discussed above, the pertinent facts bearing on the question of jurisdiction are not controverted and there is not a need for a more satisfactory showing. Plaintiff's claim for personal jurisdiction rests largely on the allegations contained in their Complaint. Those allegations have been

---

[50] *Lowder*, 711 P.2d at 278 (quotation marks omitted) (alterations in original).

[51] *Budde v. Ling-Temco Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975).

[52] *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

[53] *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

directly contradicted by evidence from Defendants and Plaintiff has failed to provide any conflicting evidence. Further, while the parties have presented competing affidavits, those affidavits do not create a dispute that would require further discovery. Because of this, discovery is not necessary and Plaintiff's Motion will be denied.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motions to Dismiss (Docket Nos. 16 and 17) are GRANTED. Plaintiff's claims are dismissed without prejudice. It is further

ORDERED that Plaintiff's Motion for Jurisdictional Discovery (Docket No. 32) is DENIED.

The Clerk of the Court is directed to close this case forthwith.

DATED this 7th day of March, 2017.

                BY THE COURT:

                _____
                Ted Stewart
                United States District Judge